# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

United States of America,

                Plaintiff,

v.

Randall Gene Whitefeather,

                Defendant.

Criminal No. 05-388(1) (DWF/RLE)
Civil No. 08-1381 (DWF)

**MEMORANDUM**
**OPINION AND ORDER**

---

William J. Otteson, Assistant United States Attorney, United States Attorney's Office, counsel for Plaintiff.

Randall Gene Whitefeather, *Pro Se*, Defendant.

James E. Ostgard, II, Esq., Ostgard Law Office, counsel for Defendant.

---

# INTRODUCTION

This matter is before the Court upon Petitioner-Defendant Randall Gene Whitefeather's ("Petitioner-Defendant") motion, pursuant to 28 U.S.C. § 2255, for an order of this Court to vacate, set aside, or correct his sentence, as well as six *pro se* discovery motions (Motion for Family & Children Services Documents (Doc. No. 77); Motion for Copies of Psychological Evaluations (Doc. No. 78); Motion for Court Transcripts (Doc. No. 79); Motion for Court Appointed Attorney's Investigative Report's (Doc. No. 80); Motion for Correspondent Letter's From Court Appointed Attorney (Doc. No. 81); and Motion for Any and All Taped Recorded Interviews with L.L.J. Victim

(Doc. No. 82)), he has filed with the Court.  In substantial part, Petitioner-Defendant alleges that his counsel, James E. Ostegard, II, was ineffective.  The Court will address in turn Petitioner-Defendant's specific allegations in which he alleges examples of ineffective assistance of counsel.  The Government opposes Petitioner-Defendant's motion.

## BACKGROUND

On September 6, 2005, Petitioner-Defendant appeared in Red Lake Tribal Court and entered not guilty pleas to two counts of Indecent Liberties for kissing a juvenile victim on the lips on two separate occasions, one count of child endangerment for hitting the juvenile on the face causing her eye to swell and bruise, and one count of child endangerment for raping the juvenile victim two times.  At that time, Petitioner-Defendant was appointed a tribal advocate, who was not a licensed attorney.

On September 21, 2005, the tribal advocate withdrew from the case because Petitioner-Defendant was requesting different counsel.  Petitioner-Defendant was then represented by another tribal advocate who was also not a licensed attorney.

On September 7, 2005, Sergeant Johnson, of the Bemidji City Police Department, learned from the FBI that a juvenile female had reported a sexual assault that occurred in the city of Bemidji.  On the same day, Sergeant Red Cloud, of the Red Lake Police Department, also called Sergeant Johnson and informed him that the juvenile female had disclosed that a sexual assault had occurred in the city of Bemidji.  (Trial Tr. vol. I, 172:17-173:13.)

2

On September 8, 2005, Sergeant Johnson and Sergeant Nelson, also of the Bemidji City Police Department, drove to the Red Lake Indian Reservation and met with the Petitioner-Defendant at the Red Lake Law Enforcement Center.  At that time, neither the FBI nor the Red Lake Police Department took part in the interviews of Petitioner-Defendant.  (*Id.* at 173:22-175:14.)  Sergeant Johnson read Petitioner-Defendant his Fifth Amendment rights and Petitioner-Defendant indicated he understood.  When Petitioner-Defendant was asked if he wanted to talk about his relationship with the juvenile victim and explain the allegations, Petitioner-Defendant responded, "um, do you mind if I have my lawyer with me?  He's [inaudible]."  (Gov't Ex. 2 at 19-22.)

Sergeant Johnson then informed Petitioner-Defendant that arrangements could be made to allow Petitioner-Defendant to speak to his tribal advocate and asked Petitioner-Defendant if that was what he wished to do.  Petitioner-Defendant did not answer, but instead asked the detectives what information they wanted to know.  The detectives explained to Petitioner-Defendant that they wanted to talk to him about the allegations of sexual intercourse.  At that time, Petitioner-Defendant spoke in some detail with the officers.  At one point in the interview, Petitioner-Defendant stated that there was one instance of what he referred to as consensual sexual relations with L.L.J., his 13-year-old stepdaughter.  (Trial Tr. vol. II, 205:23-206:6, Oct. 3, 2006; Gov't Ex. 2 at 49-55.)

After the interview, the officers returned to Bemidji and, approximately two hours after returning to Bemidji, Sergeant Johnson received a phone call from Petitioner-Defendant insisting that the officers return to Red Lake because he had additional information that he wanted to tell them.  Sergeant Johnson complied and returned to Red Lake.

Petitioner-Defendant immediately admitted to the law enforcement officers that he had been having sex with L.L.J. for the last two years and eight months.  During this second conversation, Petitioner-Defendant admitted that the sexual contact with the juvenile female took place not only in Bemidji, but at the home of his mother, on the Red Lake Reservation, as well.  Petitioner-Defendant admitted that he had sexual intercourse with the juvenile victim on the reservation both when she was under the age of 12, as well as after she had turned 12.

Subsequently, Petitioner-Defendant was indicted on federal charges of Aggravated Sexual Abuse, in violation of Title 18 U.S.C. §§ 1151, 1152, 2241(c), and 2246(2), and Sexual Abuse of a Minor, in violation of Title 18 U.S.C. §§ 1151, 1153, 2242(a)(1), and 2246(2).  The Court then appointed attorney James E. Ostegard, II, to represent Petitioner-Defendant.

Petitioner-Defendant challenged the admissibility of statements to Detectives Johnson and Nelson on Fifth and Sixth Amendment grounds.  Chief Magistrate Judge Raymond L. Erickson ruled the statements admissible in their entirety.

Petitioner-Defendant objected to the Report and Recommendation, but the Court affirmed the decision of the Magistrate Judge.

With counsel present, Petitioner-Defendant waived his right to a jury trial and was tried before this Court. After a two-day court trial, Petitioner-Defendant was found guilty on both counts. After the conviction, but before the sentencing occurred, Petitioner-Defendant sent several letters to this Court expressing dissatisfaction with his attorney's representation. At that time, he moved the Court to dismiss the case on the grounds that he had received ineffective assistance of counsel (Doc. No. 61). The undersigned dismissed his motion without prejudice so that Petitioner-Defendant could first appeal the Court's decision for the sentence imposed. On April 17, 2007, the Court sentenced Petitioner-Defendant to 468 months imprisonment on Count 1 and 180 months imprisonment on Count 2, the two sentences to run concurrently.

Petitioner-Defendant did not appeal his conviction. However, on April 7, 2008, Petitioner-Defendant filed the current § 2255 action before the Court to vacate, set aside, or correct his sentence. As noted above, he has also filed six *pro se* motions, each seeking some type of discovery. On August 5, 2008, he also filed a *pro se* Motion for Family & Children Services Documents (Doc. No. 77), a *pro se* Motion for Copies of Psychological Evaluations (Doc. No. 78), and a *pro se* Motion for Court Transcripts (Doc. No. 79). On August 7, 2008, he filed a *pro se* Motion for Court Appointed Attorney's Investigative Report's (Doc. No. 80), a *pro se* Motion for Correspondent

Letter's from Court Appointed Attorney (Doc. No. 81), and a *pro se* Motion for Any and All Tape Recorded Interviews with L.L.J. Victim (Doc. No. 82).

## DISCUSSION

## I.     INEFFECTIVE ASSISTANCE OF COUNSEL.

Petitioner-Defendant has moved this Court to vacate or reduce his sentence, asserting that his counsel was ineffective at all stages for at least five separate reasons to be addressed below.

The Court states at the outset that the record before it does not support the assertions of Petitioner-Defendant.  In fact, the transcripts of all proceedings belie the notion that Petitioner-Defendant received ineffective assistance of counsel.  None of the claims raised by Petitioner-Defendant rise to the level of an error under the first prong of the *Strickland* test.  *Strickland v. Washington*, 466 U.S. 668 (1984).  Consequently, Petitioner-Defendant has failed to meet the burden necessary to demonstrate his ineffective assistance of counsel claim.  Even if the Court were to assume that one or more of Petitioner-Defendant's claims raised in his motion rise to the level of deficient performance by his counsel, which they do not, the motion would still fail because Petitioner-Defendant has not satisfied the second prong of the *Strickland* test which requires that the error result in actual prejudice to the Petitioner-Defendant.

As noted above, Petitioner-Defendant asserts five specific examples where his attorney did not provide effective assistance to him.  First, he argues that his lawyer neglected to submit evidence that would have undermined the credibility of the minor

victim.  Second, he argues that his lawyer failed to subpoena witnesses whose testimony would have shown a pattern of untruthfulness by the minor victim.  Third, he argues that his counsel failed to call the second detective who questioned him.  Fourth, he argues that his lawyer failed to effectively cross-examine government witnesses and to accept his suggestions on what questions to ask.  Fifth, he argues that his lawyer did not challenge his confession on the grounds that the state officials interviewed him, an enrolled member of the Red Lake Tribe, on the Red Lake Indian Reservation, about a crime which took place, in part, on Red Lake Reservation lands.

As noted above, the Sixth Amendment guarantees the right to effective assistance of counsel in all criminal prosecutions.  *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970).  In *Strickland v. Washington*, 466 U.S., 668, 698 (1984), the Supreme Court established a two-prong test to evaluate ineffective assistance of counsel.  The Court will address each example raised by Petitioner-Defendant.

## A.      Failure of defense counsel to submit medical records of the victim.

Petitioner-Defendant has asserted that his lawyer should have introduced at trial a medical report of an earlier medical examination performed on the minor victim.  On the record before the Court, that examination took place when she was approximately eight years old.  At the time of that examination, the minor victim did recant her allegations, and the doctor found no physical evidence of abuse.  Consequently, Petitioner-Defendant alleges that because this report was not submitted by his lawyer into evidence, he "could not discredit the victims [sic] testimony by way of

cross-examination . . . .  Furthermore, the document would have brought doubt to their claims due to the victim's untruthfulness."

With or without the report, the trial proceeded in the same manner.  Specifically, the pertinent information from the report came out during the cross-examination and direct examination of the witnesses.  In fact, defense counsel used it to discredit the victim's testimony.  Petitioner-Defendant was not prejudiced, when the record is carefully reviewed by this Court, by counsel's decision not to physically introduce the document itself.  Cross-examination of the minor victim by defense counsel speaks for itself.  She admitted on direct and cross-examination that she had recanted the accusations in 2000 and that she had told the doctor who examined her that she made it up because she was mad at Petitioner-Defendant and wanted him out of the house.  Moreover, defense counsel pursued with the minor victim other possibilities for lying as well as inconsistencies between her statements and Petitioner-Defendant's confession.  Without a doubt, Petitioner-Defendant has not shown that his counsel's performance was outside the "wide range of professional assistance" as required by *Strickland*.  466 U.S. at 689.  As the fact-finder in this matter, the Court, with or without additional documentation, found that the victim's testimony was credible.  The submission of additional information would not have altered in any manner that finding of the Court, given the record before it.  The Court had no difficulty in concluding, based upon the record, that Petitioner-Defendant had sexually abused LLJ.

With respect to the issue of the absence of physical evidence, not only did defense counsel argue that issue in closing arguments submitted to this Court, but the Court itself questioned the nurse who performed the genital examination on the minor victim.  The presence or absence of the medical report in question would not have affected in any way the outcome of the trial.  There was no prejudice to the Petitioner-Defendant by his lawyer's decision not to submit the report itself.

### B.    Failure to subpoena certain witnesses.

Petitioner-Defendant asserts that his lawyer was ineffective for failing to subpoena several witnesses who, if called, "would have shown a pattern of untruthfulness of the victim."

The record amply establishes that defense counsel, in a highly competent manner, explored the issues of credibility and prior inconsistent statements of the victim.  However, as noted earlier, this Court found the victim's testimony credible and, in fact, contrary to the position of Petitioner-Defendant, this Court found the inconsistencies in her accounts of abuse consistent with the behavior of a sexual abuse victim.  There was no prejudice to Petitioner-Defendant from his lawyer's decision not to subpoena these additional witnesses.  The Court was well aware of the information the witnesses may have testified to, specifically that the victim had made allegations of former abuse; that she had recanted them; and that she had made inconsistent statements about the type of abuse and its frequency.  There is no likelihood that had the Court had this additional

information, that its decision on the victim's credibility would have been different.  It would not have been.

### C.    Failure to call the second detective, Detective Nelson, who interviewed Petitioner-Defendant.

Detective Nelson did not testify, though, admittedly, his voice was on the recordings of the interview with Petitioner-Defendant.  Contrary to Petitioner-Defendant's assertions, there was no confusion on the record as to who was asking the questions during the so-called five-minute delay.  The Court was in possession of the transcripts of the interviews and the recording itself.

Any fair review of the cross-examination of Detective Johnson by Petitioner-Defendant's counsel shows a highly effective cross-examination with the information that defense counsel had.  Defense counsel closely scrutinized Detective Johnson, and followed up with questioning, regarding the five-minute gap on the tape. There was zealous cross-examination on the issue.  It was more than reasonable for defense counsel to examine the one detective that the Government called and not call the second detective when it is clear, by the record, that Detective Nelson's testimony would have been duplicative and corroborative of Detective Johnson's direct and cross-examination.  If anything, it may have benefited the Government for them to call the second detective.  There was no prejudice to Petitioner-Defendant.

**D.**      **Effective cross-examination of Government witnesses.**

Petitioner-Defendant asserts that his lawyer failed to ask "questions that the Defendant wanted his lawyer to ask."  It would appear from the record taken as a whole that Petitioner-Defendant takes issue with his lawyer's cross-examinations of Government witnesses Cora Rosebear and Sergeant Red Cloud.

This Court has received a number of letters from Petitioner-Defendant.  In fact, in a letter dated December 19, 2006, he asserted that his attorney should have attempted to impeach Cora Rosebear with a prior statement contained in Sergeant Red Cloud's report.

The record clearly establishes that the cross-examination of the Government witnesses, including Cora Rosebear, was done in a professional and highly competent manner.  There was no prejudice to Petitioner-Defendant.

When the record is viewed in its totality, in the context of the numerous asserted omissions and failures that Petitioner-Defendant has asserted his lawyer committed, the Court nonetheless concludes that there is no reasonable possibility that the outcome in this case, either on credibility determinations of the victim or other witnesses, would have been different.  The trial transcript belies the notion that Petitioner-Defendant's defense counsel was ineffective by the way in which he cross-examined witnesses.  Such was not the case.  To the contrary, Petitioner-Defendant's counsel cross-examined the witnesses consistent with his extensive experience as a highly competent trial lawyer.

**E.**      **Failure to challenge the jurisdiction of state officials "to conduct an investigation on an enrolled member of a federally acknowledge tribe on a federally acknowledged reservation."**

11

The Court assumes, as the Government has, that because Petitioner-Defendant was indicted and convicted on federal charges, not state charges, that Petitioner-Defendant is claiming that his counsel should have tried to suppress the statements that he made to the state law enforcement officials on jurisdictional grounds.  If that is indeed Petitioner-Defendant's position, the Court agrees with the United States that there is no legal basis on which to suppress those statements.

The fact is that defense counsel did attempt to suppress the confession, although not on jurisdictional grounds.  The Court can state at this time that there is no likelihood that such an argument would succeed with the United States District Court.  Defense counsel did attempt to suppress the statements on both Fifth and Sixth Amendment grounds.

It is entirely understandable, based on the record before the Court, why defense counsel's motion to suppress argued that the law enforcement authorities working in tandem violated Petitioner-Defendant's Fifth and Sixth Amendment rights rather than arguing that they lacked specific permission to enter the Reservation since the state law enforcement officers had clearly been given permission to enter the Reservation and had been invited to do so by Petitioner-Defendant himself.  The record clearly demonstrates that the state law enforcement officers had permission to conduct their investigation on Reservation land and that there was no issue of jurisdiction.

Given this circumstance, namely, that the investigating state law enforcement officers had permission to be on the Reservation, there was no basis for suppressing the statements on jurisdictional grounds, as alleged by Petitioner-Defendant, and there was no prejudice to Petitioner-Defendant. Petitioner-Defendant received effective assistance of counsel on this issue.

For these reasons, the Court finds and concludes that Petitioner-Defendant received, at all stages of his case, effective assistance of counsel. This Court would have to ignore the entire record before the Court to conclude otherwise.

## II.     DISCOVERY REQUESTS BY PETITIONER DEFENDANT.

As noted above, Petitioner-Defendant has filed six separate motions seeking discovery. Pursuant to 28 foll. § 2255, a § 2255 habeas motion is controlled by Rule 6 of the Rules Governing § 2255 petitions. *See* 28 foll. § 2255, R. 6. That means that the requesting party, in this instance Petitioner-Defendant, "must provide reasons for the request." 28 foll. § 2255, R. 6(b). Pursuant to Rule 6(a), the "judge may, for good cause, authorize a party to conduct discovery . . . ." What constitutes "good cause" is within the discretion of the trial judge. *Toney v. Gammon*, 79 F.3d 693, 700 (8th Cir. Mo. 1996). Having said that, there are guidelines, set forth by the courts and the commentary to Rule 6, that establish the Court must decide whether "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief . . . ." *Bracy v.*

13

*Gramley*, 520 U.S. 899, 904, 908-09 (2002) (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)); *see also* 28 foll. § 2255, cmt. (incorporating 28 foll. § 2254, cmt.).

Petitioner-Defendant provides no reason whatsoever in his motion for why he wants copies of psychological evaluations.  Because he has provided no reasons for his request, the Court denies Petitioner-Defendant's motion for copies of psychological evaluations.  Moreover, based upon the record before the Court, the Court can contemplate no circumstance under which he could establish good cause for these evaluations.  Moreover, this Court cannot envision how such evaluations could have any effect whatsoever on the outcome of Petitioner-Defendant's case, based upon the record before the Court.  The Court is uniquely positioned to make this decision because it was the fact-finder in this case.

In Petitioner-Defendant's motion for court transcripts, motion for court appointed attorney's investigative reports, motion for correspondent letters from court appointed attorney, and motion for any and all tape interviews with LLJ, the minor victim, all that Petitioner-Defendant does is request the documents and tapes "for legal purposes" without any further explanation.  This falls far short for good cause.  Again, the Court, based upon the record before it, can see no circumstance under which any of this discovery would support his § 2255 motion.  Good cause does not exist.

Petitioner-Defendant has also moved the Court for Family and Children Services documents.  In this instance, Petitioner-Defendant does attempt to articulate specific reasons for why these documents should be provided.  However, it is a legally insufficient

14

basis to make the request.  Petitioner-Defendant has requested these documents "for the purpose of challenging government witnesses and prove no probable cause to arrest." (Doc. No. 77.)  This reason falls far short of establishing good cause given the fact that no documents are identified that he is in search of and secondly, there is no suggestion as to what these documents might establish.  On the assumption that it is Petitioner-Defendant's position that the documents might possibly show that he was not L.L.J.'s father, even if true, is irrelevant to the Court's determination of probable cause to arrest.

Based upon the record before the Court, there is no basis upon which this Court could conclude that any of these materials would assist in any manner Petitioner-Defendant's § 2255 petition.  Good cause has not been shown.

## EVIDENTIARY HEARING

The Court also concludes that an evidentiary hearing is not required in this matter. A 28 U.S.C. § 2255 petition can be dismissed without a hearing if:  (1) petitioner's allegations, if accepted as true, would not entitle petitioner to release; or (2) the allegations cannot be accepted as true because they are contradicted by the record, are inherently incredible, or are conclusions rather than statements of fact.  *Delgado v. United States*, 162 F.3d 981 (8th Cir. 1998).  Applying that standard to the allegations of Petitioner-Defendant and the record before the Court, the Court concludes that no evidentiary hearing is required in this case.

## CONCLUSION

15

Based upon the presentations and submission of the parties, the Court having carefully reviewed the record in this matter, and the Court being otherwise duly advised in the premises, the Court hereby enters the following:

**ORDER**

1.     Petitioner-Defendant Randall Gene Whitefeather's motion pursuant to 28 U.S.C. § 2255 for an order of this Court to vacate, set aside, or correct his sentence (Doc. No. 68) is **DENIED**.

2.     Petitioner-Defendant's Randall Gene Whitefeather's *pro se* Motion for Family & Children Services Documents (Doc. No. 77) is **DENIED**.

3.     Petitioner-Defendant's Randall Gene Whitefeather's *pro se* Motion for Copies of Psychological Evaluations (Doc. No. 78) is **DENIED**.

4.     Petitioner-Defendant Randall Gene Whitefeather's *pro se* Motion for Court Transcripts (Doc. No. 79) is **DENIED**.

5.     Petitioner-Defendant Randall Gene Whitefeather's *pro se* Motion for Court Appointed Attorney's Investigative Report's (Doc. No. 80) is **DENIED**.

6.     Petitioner-Defendant Randall Gene Whitefeather's *pro se* Motion for Correspondent Letter's From Court Appointed Attorney (Doc. No. 81) is **DENIED**.

7.     Petitioner-Defendant Randall Gene Whitefeather's *pro se* Motion for Any and All Taped Recorded Interviews with L.L.J. Victim (Doc. No. 82) is **DENIED**.

8.      Petitioner-Defendant Randall Gene Whitefeather's request for an evidentiary hearing is **DENIED**.


Dated:  November 24, 2008                    s/Donovan W. Frank
                                             DONOVAN W. FRANK
                                             Judge of United States District Court